Argued and submitted February 2, affirmed April 17, 1996

In the Matter of Gregory Vonahlefeld,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## GREGORY VONAHLEFELD,
*Appellant.*

(9502 60823; CA A89356)

914 P2d 1104

Thomas A. Coleman argued the cause and filed the brief for appellant.

Stephen Madkour, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Appellant was civilly committed under ORS 426.060 to the Mental Health Division (the Division). During the commitment period, the Division placed him on a trial visit pursuant to ORS 426.273.[1] Subsequently, the trial court revoked appellant's trial visit under ORS 426.275, and he appeals. ORS 19.010(2)(c). We affirm.

Appellant makes three assignments of error regarding the court's ruling arising from the revocation hearing. He first argues that the trial court erred in failing to advise him at hearing of certain rights embodied in ORS 426.100(1).[2]

■ Appellant was represented by counsel at the hearing. His sole contention is that a trial judge holding a trial visit revocation hearing must provide the same explanation of rights as required in an initial commitment hearing under ORS 426.095. The hearing in this case was authorized by ORS 426.275(2), which provides:

"On its own motion, the court with jurisdiction of a mentally ill person on such placement may cause the person to be brought before it for a hearing to determine whether the person is or is not adhering to the terms and conditions of the placement. *The person shall have the same rights with respect to notice, detention stay, hearing and counsel as for a hearing held under ORS 426.095.* The court shall hold the hearing within five judicial days of the date the mentally ill person receives notice under this section. The court may

---

[1] A "trial visit" under ORS 426.273 contemplates release of the committed person back into the community on a trial basis. ORS 426.273 authorizes the Division to base the continuation of a trial visit by a committed person on "any conditions the division shall establish."

[2] ORS 426.100(1) provides:

"(1) At the time the allegedly mentally ill person is brought before the court, the court shall advise the person of the following:

"(a) The reason for being brought before the court;

"(b) The nature of the proceedings;

"(c) The possible results of the proceedings;

"(d) The right to subpoena witnesses; and

"(e) The person's rights regarding representation by or appointment of counsel."

allow postponement and detention during postponement as provided under ORS 426.095." (Emphasis supplied.)

Appellant relies on the emphasized language. The state counters that ORS 426.100(1) is not mentioned in ORS 426.275(2) and is a discrete provision unrelated to the "rights with respect to notice, detention stay, hearing and counsel," referred to in ORS 426.095. It concludes that the legislature did not intend to mandate the advice of rights under ORS 426.100(1) in a trial visit revocation hearing.

Our task is to discern the legislature's intention. In order to determine legislative intention, we first look at the text and context of the statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). ORS 426.095 establishes the procedure for an initial civil commitment hearing. Its text says nothing about rights regarding notice, detention stay, or counsel. However, it does incorporate by reference ORS 426.090 and 426.070. ORS 426.090 requires service of citation on the allegedly mentally ill person notifying the person of the reasons that the person is believed to be mentally ill. ORS 426.070(5) governs the issuance of a warrant of detention of an allegedly mentally ill person and the advice of right to appointment and representation by counsel.[3] ORS 426.100(2) and (3) explain the rights to counsel a person has in a hearing under ORS 426.095 but make no express reference to a hearing under ORS 426.275(2). Thus, the rights of notice, detention stay and counsel mentioned in ORS 426.275 are found outside the text of ORS 426.095, but nevertheless are connected to ORS 426.095 either by reference in that statute or because the statute concerning the right expressly specifies that the right attaches to an ORS 426.095 hearing. However, there is no expressed connection between ORS 426.075(2) and 426.100(1) in any of the relevant statutes.

Moreover, ORS 426.100(1) refers to "the allegedly mentally ill person." In a revocation of a trial visit hearing, there is no "alleged" mentally ill person; the person has

---

[3] ORS 426.072, which is not referred to in ORS 426.095, provides for duties that a hospital or nonhospital facility must follow when a patient is placed in its custody pursuant to a warrant of detention under ORS 426.070. It also prohibits certain types of treatment while the patient is in its custody.

already been adjudicated as a mentally ill person. However, ORS 426.095 and the other sections that define the appellant's rights at the trial visit revocation hearing also refer to the "allegedly mentally ill person." Furthermore, the fact that ORS 426.100(1) requires advice of procedural rights applicable to a *hearing* for an "allegedly mentally ill person" suggests that it is part of the "rights with respect to hearing" provided for in ORS 426.075(2). In the light of these competing inferences, we conclude that it is not clear from the text and context of the statutes whether the legislature intended to require that the advice mandated in ORS 426.100(1) be given in an ORS 426.275(2) hearing. We therefore must turn to the legislative history.

ORS 426.275 was originally enacted in 1985 as part of Senate Bill 373. Or Laws 1985, ch 242, § 3. Section 4, subsection 2 of the bill's original draft read:

> "On its own motion, the court that made the commitment may cause the person to be brought before it for a hearing to determine whether the conditionally released person is or is not adhering to the terms and conditions of the early release. The person shall have the same rights with respect to notice, detention stay, hearing and counsel as for a hearing held under *ORS 426.070 to 426.130*." (Emphasis supplied.)

As drafted, the bill made express reference to the inclusion of ORS 426.100(1). However, before the bill's final draft, it was modified to incorporate only ORS 426.130. The changes were characterized as "minor substantive amendments." Testimony, SB 373, Senate Judiciary Committee, March 21, 1985, Tape 62, Side A, 25-26. As enacted, ORS 426.265 provided that the person would have "the same rights with respect to notice, detention stay, hearing and counsel, as for a hearing held under ORS 426.130." At the time, ORS 426.130 provided:

> "After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If in the opinion of the

court the person is not mentally ill, the person shall be discharged forthwith. If, based upon clear and convincing evidence, it is the opinion of the court that the person is mentally ill, the court may order [release, conditional release to a guardian, friend or relative, or commitment]."

In 1987, the legislature amended ORS 426.275 to delete the reference to ORS 426.130 and substituted ORS 426.095 instead. *See* Or Laws 1987, ch 903, § 29. We are unable to find any explanation for the amendment in the legislative history. ORS 426.095 differs in context from *former* ORS 426.130 in that it imposes procedural requirements for the initial commitment hearing. In that vein, it appears that the legislature could also have amended ORS 426.275(2) at the same time to include the procedural rights expressed in ORS 426.100(1), had it chosen to do so. That omission is significant. ORS 174.010 forbids us from inserting into a statute what the legislature has omitted. We conclude that when the text and context of ORS 426.275 are considered in the light of its legislative history, the legislature did not intend that ORS 426.100(1) be encompassed within the ambit of the statute.

■ Appellant also assigns error to the admission of testimony from his case manager at the hearing regarding certain statements appellant made to him. Appellant argues that his statements are subject to the psychotherapist-patient privilege in OEC 504(2) because the case manager was acting as his psychotherapist at the time.[4] The case manager testified that appellant threatened to "kick his ass" and also threatened to rape the "whores in St. Johns." Appellant only objected to the latter testimony, and the trial court sustained the objection.[5] On appeal, appellant now argues that

[4] OEC 504(2) provides:

"A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purposes of diagnosis or treatment of the patient's mental or emotional condition among the patient, the patient's psychotherapist or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."

[5] After the psychotherapist testified regarding both statements, appellant's counsel objected as follows:

"Well, your Honor, we have an objection and we would move to strike this witness's testimony. He's just related that it's during the course of a confidential relationship that this information came forth, and our motion at this time

the former statement is also subject to the privilege. However, we will not consider an argument that was not preserved below. ORAP 5.45.

Appellant's last assignment of error does not warrant discussion.

Affirmed.

---

is to strike any references to the whores in St. Johns as confidential and that [appellant] does not waive his right to confidentiality in that regard.

"We would ask further that the Court limit the testimony to any threatening behaviors to [the psychotherapist] that were not confidential in nature, and *I think he has testified to that at this point.*" (Emphasis supplied.)